IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 22 CR 610 |
| ) | |
| DARIOUS ROBINSON ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Darious Robinson is charged in this case under 18 U.S.C. § 2241(a)(1). The indictment, which was returned on March 27, 2023, alleges that on September 23, 2022, while in the Chicago Metropolitan Correctional Center, Mr. Robinson knowingly caused another person to engage in a sexual act by using force against that person.

Mr. Robinson has been represented by a series of four appointed lawyers in this case. He has had significant differences with some or all of those lawyers regarding how to defend his case. One of these differences involved Mr. Robinson's request to file a motion to dismiss the indictment. The lawyers (or at least some of them) declined to file the motion that Mr. Robinson proposed. The Court ultimately offered to allow Mr. Robinson to file his motion *pro se*. Mr. Robinson did not take the Court up on the offer to file a written motion. Still later, the Court proposed to have Mr. Robinson argue his motion orally. Mr. Robinson agreed to do so. The Court heard Mr. Robinson's oral motion to dismiss on December 17, 2024. The government filed a written response to the motion on January 14, 2025. Mr. Robinson presented oral argument in reply to the government's response on February 14, 2025.

Mr. Robinson's contentions in support of dismissal of the indictment include: (1) at the time of the charged offense, he was in custody pursuant to an unlawful and improper arrest; (2) the government misled the magistrate judge at the preliminary hearing and misled the grand jury in obtaining an indictment against him; (3) the government tampered with hair and DNA evidence; (4) the government made misrepresentations to obtain a warrant for a buccal swab of Mr. Robinson; and (5) his speedy trial rights have been violated.

The Court addresses each of Mr. Robinson's contentions in this decision.

**1.     Claim of improper arrest and detention**

Mr. Robinson's first contention is that he was improperly arrested and detained for a claimed violation of supervised release. As a result, Mr. Robinson says, he "wasn't supposed to be at the MCC." He contends that the present charges are the "fruit of the poisonous tree" that began with his improper arrest and that the charges should be dismissed for this reason.

When a person is unlawfully arrested, he may sue to recover monetary damages. But that is not what is at issue here; any lawsuit to recover money would have to be a separately-filed civil case. As it relates to the present criminal case, a person who is unlawfully arrested may move to suppress evidence that law enforcement obtained as a result of the unlawful arrest. *See, e.g., New York v. Harris,* 495 U.S. 14, 19 (1990) (when a defendant is arrested in violation of his Fourth Amendment rights, evidence obtained as a result of the Fourth Amendment violation that "bear[s] a sufficiently close relationship to the underlying illegality" is subject to suppression.).

In this case, however, Mr. Robinson has not identified any *evidence* that the

government intends to use on the sexual assault charge that was obtained from his arrest. Nor could there be, as the arrest occurred before the alleged sexual assault. Rather, Mr. Robinson's contention is that *this case* is the direct result of his allegedly unlawful arrest and that the case should be dismissed as a result.

The problem with Mr. Robinson's contention is that the law does not support his request. Specifically, "[t]he body or identity of a defendant . . . is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *United States v. Chagoya-Morales*, 859 F.3d 411, 415 (7th Cir. 2017); *see INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).

To put it another way, the fact (assuming it is a fact) that Mr. Robinson was improperly arrested and jailed does not entitle him to dismissal of the charge against him. By way of illustration, if a person is illegally arrested for something he did not do, but then, while being held in jail on that false charge, intentionally kills another person without justification, he is still guilty of murder; he doesn't get a pass on the ground that he shouldn't have been in jail in the first place. A person in this situation—or in Mr. Robinson's situation, if he was unlawfully arrested—potentially could argue the unlawfulness of his earlier arrest as a mitigating factor in sentencing after a conviction, but he is not entitled to dismissal of the charges based on the unlawful arrest.

For these reasons, the Court overrules Mr. Robinson's first argument for dismissal.

**2.    Claim of prosecutorial misconduct**

Mr. Robinson's second argument is that the government presented misleading evidence at the preliminary hearing and to the grand jury that indicted him. Specifically,

Mr. Robinson says that the government failed to present to the magistrate judge at the preliminary hearing and failed to present to the grand jury evidence that was favorable to Mr. Robinson. This included, Mr. Robinson contends, evidence that the alleged victim had told other MCC inmates that "nothing happened" between him and Mr. Robinson; that other inmates (purportedly gang members) had coerced the alleged victim to say that Mr. Robinson sexually assaulted him; and that the alleged victim did not promptly tell correctional officers that he had been sexually assaulted.

Initially, the Court needs to make clear that it does not know whether what Mr. Robinson is saying about the alleged victim's earlier statements and the alleged coercion is true or not. But assuming that Mr. Robinson is right about all of this, and the government failed to present at the preliminary hearing or to the grand jury evidence that was favorable to Mr. Robinson, that would not entitle him to dismissal of the indictment prior to trial.

Starting with the preliminary hearing: the sufficiency or propriety of the evidence at the preliminary hearing is a moot point at this stage of the case. The case against Mr. Robinson is proceeding on an indictment returned by a grand jury, not the criminal complaint that was before the magistrate judge at the time of the preliminary hearing. The purpose of a preliminary hearing is to determine if there is probable cause to support the charge against the defendant and therefore hold the defendant over to the grand jury. *See* Fed. R. Crim. P. 5.1(d). But once the criminal complaint is superseded by a grand jury indictment, the sufficiency of the complaint no longer matters, because the grand jury at that point has made its own determination of probable cause. *See, e.g., United States v. Werbrouck*, 589 F.2d 273, 275 (7th Cir. 1978) (per curiam). At

present, Mr. Robinson is facing a charge in an indictment returned by a grand jury, not the criminal complaint that was in place when the preliminary hearing was held.

As it relates to the grand jury, Mr. Robinson's argument amounts to a contention that the evidence before the grand jury was insufficient, or that the government failed to present exculpatory or impeaching evidence to the grand jury, or that the story the grand jury heard was misleading or incomplete. Assuming that is what happened (a point on which the Court makes no finding), it would not be a basis for dismissal of the indictment prior to trial.

First, an indictment that is valid on its face—as this one is—is not subject to challenge based on the claimed unreliability or competence of the evidence that was presented to the grand jury. *See United States v. Calandra*, 414 U.S. 338, 344-45 (1974). That is essentially what Mr. Robinson is arguing here; he claims that the grand jury heard an unreliable account of what happened because it was not told all of the relevant background and context. But as the Supreme Court held in *Calandra*, that is not a valid basis for dismissing an indictment. More generally, a court may not look behind an indictment to determine if the evidence upon which it was based was sufficient. *See Costello v. United States*, 350 U.S. 359, 363 (1956).

Second, the government does not have a duty to present exculpatory evidence to the grand jury, and accordingly a court may not dismiss an indictment because the government failed to do so. *See United States v. Williams*, 504 U.S. 36, 51-53 (1992). Similarly, alleged perjury by a grand jury witness is not a basis for dismissal of charges. *See, e.g., United States v. Fountain*, 840 F.2d 509, 513-15 (7th Cir. 1988). The government's *knowing* use of perjured testimony before the grand jury may be a basis

5

for dismissal, at least when it amounts to creation of a trumped-up charge. *See id.* at 513; *United States v. Roth*, 777 F.2d 1200, 1203-04 (7th Cir. 1985). But on the record before the Court at this point, Mr. Robinson has not established that this happened in the present case.

The Court wishes to emphasize that at trial, Mr. Robinson may offer evidence regarding prior inconsistent statements by the alleged victim, regarding his failure to initially report that he had been sexually assaulted, and regarding any coercion of the alleged victim by other inmates. But the law does not authorize holding a pre-trial hearing regarding the sufficiency of the government's evidence or the believability of its witnesses. That is what a trial is for.

**3.     Issues relating to identification and testing of hairs**

An FBI Laboratory report dated April 27, 2023 refers to the recovery of "a pubic hair portion" that was considered suitable for microscopic comparison purposes and "transitional pubic hairs" that were considered to have limited suitability for microscopic comparison purposes. The transitional hairs, however, were said to have roots that were potentially suitable for nuclear DNA analysis. *See* Gov't Resp., Ex. 5.

A later FBI Laboratory report, dated September 12, 2023, referenced the examination of "[a] pubic hair portion and two (2) transitional pubic hairs" and also cross-referenced the April 27 report. *See* Gov't Resp., Ex. 12. The September report said that the pubic hair portion (identified as "Item 35") and one of the transitional pubic hairs (part of "Item 36") had both similarities and differences to the hairs in a sample taken from Mr. Robinson. The report stated that those items were being designated for possible DNA analysis. The report stated that the other transitional pubic hair

6

(apparently also part of "Item 36") was microscopically dissimilar to the sample from Mr. Robinson, thereby excluding him as a possible source of that hair. *Id.* The report said nothing about DNA testing of this hair.

Later DNA testing was done at an outside lab. Even though the September 2023 lab had "designated" only two items (the pubic hair portion and one of the transitional pubic hairs) for DNA testing, it appears that DNA testing was performed on all three hairs/hair fragments, not just two. The "pubic hair portion" referenced in the earlier reports—"Item 35"—was described in the September 2023 report as a "hair shaft" and was referenced by the DNA lab as "Item 2." The two transitional pubic hairs from the earlier reports—"Item 36"—were likewise described in the September 2023 report as "transitional pubic hairs" and were referenced by the DNA lab as "Item 3-1" (a hair) and "Item 3-2" (a "hair fragment"). The testing by the outside laboratory resulted in a finding that Mr. Robinson was not the source of the DNA in any of the hairs. *See* Gov't Resp., Ex. 14 (report dated June 26, 2024).

Even though the pubic hair evidence—as just described—tends to exculpate Mr. Robinson, he has raised several issues about the collection and preservation of the pubic hairs. First, Mr. Robinson says that it can't be determined where the pubic hairs came from. It is true that the specific reports referenced above do not say exactly where the hairs were recovered; the Court does not know if there are other reports that provide this information. (Just so Mr. Robinson knows, the Court does not receive or have access to the discovery produced by the government in this or any other case; rather, the Court has access only to any reports that are provided to the Court as attachments to motions or otherwise.)

7

But even assuming that the pubic hair evidence—which, again, *tends to exculpate Mr. Robinson*—cannot be connected with the crime scene, that would not be a basis to dismiss the charges. Rather, it would be a basis to exclude the pubic hairs from evidence during the trial. In order to admit the pubic hair evidence, the party seeking to offer it will have to lay a foundation showing it is relevant, and also will have to establish a chain of custody. But as the Court has said to Mr. Robinson many times throughout the numerous in-court proceedings in this case, that's a matter of evidence admissibility. The claimed lack of connection between the pubic hairs and the crime scene is not a basis to dismiss the charge against Mr. Robinson.

Mr. Robinson also contends that there is a discrepancy regarding the number of pubic hairs that were recovered. He says that on some occasions the government has said it was one pubic hair and that on others it has said it was three pubic hairs. During the December 2024 hearing, Mr. Robinson cited transcripts of court hearings that he said showed this discrepancy.

The Court has reviewed each of these transcripts carefully, from front to back, more than once. The Court has not found a discrepancy. In court, the government has consistently described the pubic hair evidence as consisting of *pubic hairs* (plural), not *a pubic hair* (singular). That's what is shown in the May 19, 2023 and April 24, 2024 transcripts, two of the three transcripts cited by Mr. Robinson during the December 2024 hearing. Mr. Robinson also cited page seven of the January 9, 2024 transcript. Here's what that page reports:

> THE COURT: So then the other issue that we have to deal with is the DNA testing. And so I got a reply from the government, and the gist of the reply is that what we're really talking about now -- and you'll correct me if I'm wrong, Mr. Hussain -- what we're really talking about now in terms of

8

>what's referred to as the destructive testing -- by "destructive testing," I mean it will use the sample and it won't be -- it will be gone at that point -- it's one hair. And the process of extracting DNA from the hair requires the use of the whole hair. You can't use part of it because if you only use part of it, there's a good chance that you won't get enough DNA, and then you're basically out of luck. Is that a reasonable summary?
>
>AUSA HUSSAIN: Right, your Honor. There's one hair that we were talking about that had a potential to be split, and then based on the reply, that lessens the chance of an accurate profile if that's done.

Jan. 9, 2024 Tr. at 6-7.

If Mr. Robinson is reading this as a statement by the government that there was only one pubic hair, period, then he is reading it wrong. First of all, *the Court* (not the government) started the discussion, stating that in considering "what's referred to as the destructive testing," "it's one hair." First, that's a statement by the Court, not by the government. Second, it's clear that the Court is not talking about the entire universe of pubic hair evidence; rather it's talking about *a specific hair* on which destructive testing was being proposed. AUSA Hussain's response confirms this. He says, "There's one hair that we were talking about *that had a potential to be split*." Here Mr. Hussain isn't saying that there's one pubic hair, period. Rather, it is very clear from his statement that he's talking about a particular hair that potentially could be split in two so that both parties could have it tested separately if they wanted.

In short, Mr. Robinson has not identified any hearing transcript where there is a representation by the government that only one pubic hair was recovered. There is no ground for dismissal of the indictment based on the pubic hair evidence or its handling or any supposed "discrepancies."

    4.    **Alleged misrepresentations to obtain buccal swab warrant**

Mr. Robinson next argues that the government obtained a warrant for a buccal

9

swab by making false statements. The buccal swab is what enabled the government to obtain Mr. Robinson's DNA. (Again, the DNA comparison of the pubic hair evidence *excludes* Mr. Robinson.) To obtain a hearing on a request to suppress evidence obtained under a search warrant due to misrepresentations, Mr. Robinson must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Here is what the agent's affidavit in support of the warrant application said about pubic hairs related to the charged offense:

> On April 27, 2023, the FBI Laboratory issued a report related to the clothing recovered from Victim. The laboratory report states that a pubic hair recovered from the clothing exhibits characteristics of African ancestry. The laboratory report states that the hair is suitable for meaningful comparison and potentially suitable for DNA comparison to a known sample.

Applic. & Affid. for Search Warrant ¶ 26 (dkt. 33).

Mr. Robinson appears to be citing this as another example of a discrepancy regarding the pubic hairs. If so, Mr. Robinson may be correct; there does appear to be a discrepancy.

First, here is what the April 27, 2023 FBI Laboratory report says about the pubic hairs:

> A pubic hair portion which exhibits characteristics of African ancestry was recovered from Items 24 through 29; this hair is suitable for meaningful microscopic comparison purposes.
>
> Transitional pubic hairs which exhibit characteristics of African ancestry were recovered from Items 24 through 29; these hairs are of limited suitability for meaningful microscopic comparison purposes but

10

have roots that are potentially suitable for nuclear DNA analyses.

Gov't Ex. 5 at 3. Second, here is what the September 12, 2023 FBI Laboratory report says about the pubic hairs:

> A pubic hair portion and two (2) transitional pubic hairs which exhibit characteristics of African ancestry and previously characterized in FBI Laboratory report 2022-02340-12 dated April 27, 2023 were compared to the pubic hair sample from Darious Robinson (Item 33).
>
> The pubic hair portion and one (1) transitional pubic hair exhibit both similarities and slight differences to the hairs in the pubic hair sample from Darious Robinson (Item 33). Accordingly, based on this known head hair sample, no conclusion can be reached as to whether or not Darious Robinson can be included as a possible source of these hairs. The pubic hair portion and transitional pubic hair have been designated as Items 35 and 36, respectively, for possible DNA analyses.

Gov't Ex. 12 at 3.

To summarize:

- The January report said that the "pubic hair portion" is suitable for microscopic comparison but says nothing about whether it is suitable for DNA analysis. The same report says that both "transitional pubic hairs" are not really suitable for microscopic comparison but may be suitable for "nuclear DNA analysis."\
- The April report says that *both* the pubic hair portion and one of the transitional pubic hairs are being designated for possible DNA analysis.

The statement in the April report about the pubic hair portion being designated for DNA testing represents an arguable discrepancy with the January report, which says nothing one way or the other about DNA analysis of the pubic hair portion. But if this is a discrepancy, it's really a small one.

There is a second discrepancy. The agent's affidavit in support of the search

11

warrant application says that *a* hair—one—was found suitable for DNA analysis. But the April 2023 FBI Laboratory report, the one the agent cited, said that *both* of the transitional hairs are suitable for DNA testing. That is an arguable inconsistency between the two reports.

But to successfully challenge a warrant, it's not sufficient to show that there was an inconsistency or that an inaccurate statement was used to obtain the warrant. Rather, as discussed earlier, the Supreme Court has ruled that a defendant must make a substantial preliminary showing that the inaccurate statement was knowingly or recklessly false, *and* that the false statement was "necessary to the showing of probable cause." *Franks*, 438 U.S. at 155-56. The Court sets aside the question of knowing or reckless falsity. The problem here for Mr. Robinson is that the specific count of hairs from the crime scene that were to be submitted for testing was in no way "necessary to the showing of probable cause." To obtain a warrant for a buccal swab to get Mr. Robinson's DNA, it was enough that there was *one* pubic hair suitable for DNA testing. In other words, it wouldn't have mattered if the number of hairs to be compared was one, two, or three. In short, if the agent who submitted the affidavit was undercounting, this did not influence the issuance of the search warrant.

For these reasons, the Court concludes that even if the application for a search warrant contained inaccuracies regarding the pubic hairs, they were not *material* false statements that influenced the issuance of the warrant. Mr. Robinson may point out the inaccuracies and discrepancies at trial if relevant, but the inaccuracies and discrepancies do not entitle him to suppression of the results of the DNA testing (which, the Court again emphasizes, were *helpful* to Mr. Robinson), let alone dismissal of the

indictment.

5.   **Speedy trial**

There was a delay of about 100 days between Mr. Robinson's arrest and the return of an indictment. This district's chief judge extended the Speedy Trial Act's thirty-day deadline for returning an indictment twice. The first extension, for sixty days, was premised upon the government's representation that an important witness who was under indictment on unrelated charges was refusing to testify before the grand jury in Mr. Robinson's case. The government had filed a motion to compel him to testify and was awaiting a ruling on that motion. The second extension, for another forty-two days (six weeks), was premised upon the government's representation that it was experiencing delays in arranging interviews of other potential witnesses, all of whom were MCC detainees awaiting criminal charges, and that it was awaiting results from DNA testing on swabs from injuries on the alleged victim's neck. Neither of these extensions amounted to an abuse of discretion. *See United States v. Hills*, 618 F.3dd 619, 625 (7th Cir. 2010).

Post-indictment, the trial of this case has been delayed on numerous occasions. All of the Court's exclusions of time under the Speedy Trial Act have been appropriate. The first significant delay was the result of a litigation over a request by Mr. Robinson's then attorney(s) to conduct DNA testing at an outside laboratory—a request the Court ended up granting. And nearly all of the delay since then has resulted from Mr. Robinson's requests to discharge his first three appointed lawyers (Jack Corfman, Michael Nash, and Michael Leonard) and the time needed for their successors to prepare and get up to speed. The Court's exclusions of time under the Speedy Trial Act

13

were all properly supported. As for Mr. Robinson's Sixth Amendments right to a speedy trial, nearly all of the delay was occasioned by a defense request for outside DNA testing; Mr. Robinson's own wishes to discharge his appointed attorneys; and, more recently, by the need to give him time to prepare to orally argue his motion to dismiss and the time needed for the Court to consider the motion.

For these reasons, neither Mr. Robinson's statutory nor his constitutional speedy trial rights call for dismissal of the indictment.

## Conclusion

For the reasons stated above, the Court denies Mr. Robinson's oral motion to dismiss the indictment.

Date: March 4, 2025

_____
MATTHEW F. KENNELLY
United States District Judge